[No. 22943.   Department Two.   February 2, 1931.]

I. J. BOYER, *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

*The Attorney General* and *Harry Ellsworth Foster, Assistant,* for appellant.

*Frank P. Christensen* and *Phil K. Eaton,* for respondent.

MILLARD, J.—The department of labor and industries denied plaintiff's claim for permanent total disability by reason of lymphatic leukemia, following an injury, and awarded to him compensation for fifteen degrees permanent partial disability. Plaintiff appealed to the superior court, which reversed the order of the department and entered judgment in favor of the claimant. From that judgment, the department has appealed.

[1]Reported in 295 Pac. 737.

On June 5, 1928, while respondent was in the employ of the Bay City Lumber Company, his right foot was injured by the falling thereon of a slab weighing two hundred pounds. Prior to his injury, the respondent had not been under the care of a physician for twelve to fifteen years, except at one time, when one of his thumbs was injured. He had worked for the lumber company steadily for eighteen months, immediately preceding his injury. At the time of the injury, the respondent weighed one hundred and fifty-three pounds. At the time of the hearing, his weight had decreased eleven pounds; and, so the respondent testified, his injured foot was in such condition that he had to walk on his heel. On the same day that he was injured, the respondent reported to his attending physician for treatment. The treatment consisted of applications to and elevation of the foot, and rest in bed approximately four weeks. For ten weeks thereafter, the respondent required the aid of crutches to walk. The crutches were then discarded for a cane. On August 11, 1928, respondent was examined by appellant's chief medical advisor, who reported that he thought the respondent was suffering from a vasomotor disturbance of the circulation,

". . . and that use will produce a recovery quicker than anything else. We know that vasomotor control of the vessels in the neighborhood of a trivial injury sometimes is greatly disturbed. He is going to attempt to use the foot, with the aid of a crutch and will know in a few days. While this man's compensation approximates his wages, I can not help but feel that he is disabled, and believe the claim will have to be allowed."

On November 6, 1928, by request of the appellant, the respondent was examined by a Dr. Anderson, who found an inguinal swelling on respondent's right side. He stated that respondent was unable to work, and

that he was unable to state when the respondent would be able to work. On November 9, 1928, the respondent was again examined by the appellant's chief medical advisor, who reported that the respondent's attending physician thought the patient was malingering, but that

"I have not wholly agreed with his conclusion in regard to the man. It seemed to me as if there has always been something the matter with him. . . . the pain and distress in the foot seems to have largely recovered, but we have not an adenitis in the inguinal region, corresponding to the side on which he was injured. . . . I am at a little loss to determine what is the present condition. I will send him to Doctor Dowling. It might be well to have someone else's idea about him."

On November 15, 1928, about five months after the injury, respondent was examined by Dr. Dowling, who reported:

"Our diagnosis in the case of Mr. Boyer is chronic lymphatic leukemia; the leukemia probably preceded the injury, but his disability has followed the injury continuously, and inasmuch as the cause of lymphatic leukemia is at present unknown, there must be assumed, from a legal standpoint, at least, a definite causal relationship between his injury and his disability, which is, at present, 100 per cent. He was clinically well before the accident, and has not been well since."

Some time in August, 1929, the respondent was examined by an assistant medical advisor of the department. His report is as follows:

"This man had a bruise of the right foot on June, 1928. He is now suffering from a condition of lymphatic leukemia, and to my mind there is absolutely no relationship between his injury and his present condition. He complains of pain in the upper part of the right leg, and weakness. The inguinal glands are en-

larged, as are all the other glands. If we assume that the lymphatic leukemia is the result of his injury, we have a pension case. I think he should be sent to a commission in the Harbor to settle this point and then be governed accordingly.''

That same month, the respondent was examined by a commission of three physicians. The report of that examination reads as follows:

''Our diagnosis is that the man has chronic lymphatic leukemia. Undoubtedly the man had this some time before the injury, and it is our opinion that the condition is fixed and has nothing to do with the leukemia; that the P. P. D. is not more than fifteen degrees and this is a very liberal allowance. He has every appearance of malingering, so far as this injury is concerned.''

The respondent was carried by the department on time loss from the date of his injury until August 28, 1929, when his claim for permanent total disability was denied, and his claim was closed with an award of four hundred and fifty dollars for permanent partial disability, as recommended by the commission of three physicians. The respondent appealed to the superior court, with the result above recited.

■ Appellant contends that the existence of the relationship of cause and effect was erroneously concluded by the court from the testimony, all of which is to the effect that the cause of lymphatic leukemia is unknown, but in this case followed an injury to the respondent's right foot.

It appears, from the testimony of the physician witnesses, that lymphatic leukemia is a disease of the blood and blood-making organs (the bone marrow and spleen); that the disease is attended with progressive anaemia, internal hemorrhage, and increasing exhaustion. Each of the physicians testified that the cause of lymphatic leukemia was unknown. None was

of the opinion that the disease of lymphatic leukemia from which respondent was suffering was caused by the injury to his foot. Four of the physician witnesses were of the opinion that there was no relationship between the injury and the disease.

To support his contention that a causal connection between the injury and the present total disability has been proved, respondent relies upon the report of Dr. Dowling, which, he insists, is supported by the testimony of Dr. Hunter. These physicians testified, as did the other physicians, that the cause of lymphatic leukemia is unknown. Dr. Dowling testified that the leukemia probably preceded the injury,

". . . but his disability has followed the injury continuously, and inasmuch as the cause of lymphatic leukemia is at present unknown, there must be assumed, from the legal standpoint at least, a definite causal relationship between his injury and his disability."

Dr. Hunter, who examined the respondent November 12, 1929, was called as a witness by respondent, and testified as follows:

"Q. And what did your examination show? A. It showed that the man was at times suffering from chronic lymphatic leukemia, which either followed, or was coincident with a minor injury,—I think it is his right foot. . . . This man's history, as given to me, shows that he was injured on the 5th of June, 1928, when a slab fell on his right foot. He was perfectly well and had been working continuously up to that time. There was no fractures, but the foot swelled badly and the toes turned blue. He was ten weeks on crutches and has been unable to work ever since. He had virtually no treatments since the time of his injury. . . . transverse arch of his right foot is obliterated; there is no evidence of fracture. . . . Q. Would you say that Mr. Boyer is now suffering from chronic lymphatic leukemia? A. Unquestionably, he is. . . .

The causes of lymphatic leukemia are unknown; there have been many factors ascribed as causes of lymphatic leukemia, among which trauma (bruise) is one. I am perfectly positive that no one is able to state definitely the cause of lymphatic leukemia. Inasmuch as this man worked continuously without time loss, over at least a year preceding his accident, it would not be unreasonable to assume that the accident was the factor which precipitated his total disability, whether it was the causative factor of his leukemia or not, it is impossible to say. On the other hand, it is not possible to say truthfully that it had nothing to do with it.''

Dr. Dowling's opinion is to the effect that, inasmuch as the cause of the disease is unknown, and there is no evidence of its presence prior to the injury, and, following the injury, the disease became apparent, ''there must be assumed from those facts a definite causal relationship between his injury and his disability.''

Dr. Hunter's opinion is not that strong. He testified that it would not be unreasonable to assume that the accident was the factor which precipitated the total disability, but was unable to say whether it was the causative factor of the disease. He, too, testified that the cause of lymphatic leukemia was unknown.

Dr. Dowling goes no farther than that the injury must be assumed as the cause of the disease, while Dr. Hunter is of the view that it would not be unreasonable to so assume. That testimony rises no higher than conjecture. When viewed in the light of the testimony that the cause of the disease is unknown, and weighed with the testimony of four other physicians that there was no relationship between the injury and the disease, it is clear that respondent has failed to sustain the burden of proving, by a fair preponderance of the evidence, either that the blow caused the disease or accelerated its development.

"In all court proceedings under or pursuant to this act the decision of the department shall be *prima facie* correct, and the burden of proof shall be upon the party attacking the same." Rem. Comp. Stat., § 7697.

"Appellant has not met the burden thus placed upon him, and if we were in doubt as to the preponderance of the facts, our decision, under this section, must necessarily go against appellant." *Marney v. Industrial Insurance Department,* 98 Wash. 483, 167 Pac. 1085.

We held in *Tomovich v. Department of Labor and Industries,* 126 Wash. 287, 218 Pac. 197, that an appeal from a decision by the department that appellant's appendicitis was not the result of an accident, is not sustained by the burden of proof that it was the result of the accident, where medical experts stated a positive contrary opinion, as in the case at bar, although admitting a possibility thereof.

To the same effect is *Anton v. Chicago, Milwaukee & St. Paul R. Co.,* 92 Wash. 305, 159 Pac. 115. Anton's shoulder was bruised by a fall. Seven months later, tuberculosis of the shoulder joint developed. One physician witness gave it as his opinion that the injury was the determining cause. That opinion was in the face of the established fact that tuberculosis was the unusual, rather than the usual, thing, and very unusual in the shoulder joint, since the injury was not the natural and probable consequence of the fall. We said:

"Taking the opinion of the witness for the appellant, as quoted above, at its full worth, we think it is no more than a statement of a possibility, or possibly a probability, more or less remote, that the tuberculosis is a result of the injury. This is not enough. The law demands that verdicts rest upon testimony and not upon conjecture and speculation. There must be some proofs connecting the consequence with the

cause relied upon. The testimony, whether direct or circumstantial, must reasonably exclude every hypothesis, other than the one relied on.''

In the case at bar, there is no testimony on the part of the medical experts that in their opinion, the disease was caused by the injury. None, even, was of the opinion that the disease most probably might have been caused by the injury. All testified the cause of the disease was unknown. Four of the six medical experts testified that, in their opinion, the disease was not caused by the injury. The cause of lymphatic leukemia is not known to medical science, therefore it is not a natural inference that that disease was caused by the injury because the respondent was well and worked up to the time of the injury, and after the injury the disease developed. Whether the disease was caused or aggravated by the injury to his foot, the respondent has not established by a fair preponderance of the evidence.

*Nelson v. Industrial Insurance Department,* 104 Wash. 204, 176 Pac. 15, cited by respondent, is distinguishable upon the facts from the case at bar. There was testimony that the injury sustained by Nelson was of such a character, and that the bruise was in such close proximity to his eye, that the optic nerve was injured at the time of the accident. Nelson was knocked off a moving flat car by the branch of a tree, and fell to the ground. He received a severe blow on the left side of his head. Following the accident, Nelson suffered a great deal of pain in his left eye, finally losing the sight of that eye. The facts disclosed a connection between the injury and the resultant loss of sight in the eye near the bruised side of his head. No such causal relationship between the injury and the disease has been shown in the case at bar. None of the medical experts was of the opinion that there

existed a reasonable certainty that the disease was caused by the injury to the respondent's right foot. There must be, as said in *Metz v. Gallagher*, 223 App. Div. 548, 229 N. Y. Supp. 65, "some evidence of probative value that removes the question of causal relation from the field of speculation and surmise."

The judgment is reversed, and the order of the department affirmed.

TOLMAN, C. J., BEELER, BEALS, and FULLERTON, JJ., concur.