[No. 29549.  Department One.  September 7, 1945.]

ANNA KRALEVICH, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES *et al., Respondents.*[1]

[1]Reported in 161 P. (2d) 661.

*F. W. Loomis,* for appellant.

*The Attorney General* and *Harry L. Parr, Assistant,* for respondent Department of Labor and Industries.

*L. B. Donley,* for respondent Aberdeen Plywood Corporation.

BEALS, C. J.—During the month of May, 1943, Anna Kralevich (hereinafter referred to as claimant) was in the employ of Aberdeen Plywood Corporation, pulling plywood off the dry chain and stacking it on skids. While so employed on the 6th day of May, a particle of sawdust or some similar substance became lodged in her right eye, causing the eye to become inflamed. She complained of pain in her eye, but none of her associates could see any foreign substance therein. A neighbor who had known claimant for many years testified that after May 6th the eye was red and watery, and that she had never noticed any such condition prior to that date.

The eye continuing sore and inflamed, May 24th claimant consulted Dr. F. N. Berken. The doctor examined the eye but did not find any condition which called for correction.

The next day, claimant consulted Dr. O. L. Adams, who discovered a small foreign body under the right upper lid, and removed the same. By this time, both claimant's eyes had become inflamed and swollen, but this condition disappeared after treatments administered by Dr. Adams. Claimant, however, complained that the vision of her right eye was injuriously affected, and that she continued to suffer pain in the eye and was subject to headaches which she attributed to the injury to her eye.

May 24th, the accident was reported by claimant, and the following day a second report was made, signed by Dr. Adams, who stated that he removed a foreign substance from the eye.

July 9th, the supervisor signed an order closing the claim "for such medical treatment as is provided by law." No time loss was allowed and no permanent partial disability award was made.

July 20th, claimant applied for reopening of her claim, her application having been denied August 5th. A short time thereafter, claimant petitioned for a rehearing before the joint board, the petition having been granted August 30th.

October 6, 1943, a hearing was held before the joint board and testimony taken. Further testimony was taken December 28, 1943. February 16, 1944, the joint board sustained the orders entered by the supervisor, and from this order claimant appealed to the superior court.

Before discussing the merits, a preliminary question should be noticed.

It appears that, in asking for reopening of her claim under date July 20th, as above stated, claimant's physician, who assisted her in preparing the application, by inadvertence placed the same upon a form intended as a basis for a claim upon the ground of aggravation. The application was denied, the order stating that "a careful review has been made of your file," etc., and thereafter, in preparing her petition for a rehearing before the joint board (which petition was granted), claimant in that petition also referred to the matter of aggravation of her injury.

The department now contends that, because of the foregoing, claimant was, and is, limited to a claim for aggravation only.

This contention is without merit. It appears that the department was nowise misled, nor did it suffer damage because of the matters referred to. No technical advantage may now be taken of the fact that, in asking that her claim be reopened, claimant used an inappropriate form. Her petition for a rehearing before the joint board, when granted, as it was, brought before that body for rehearing claimant's

application for relief, as well as her subsequent application for reopening of her claim. By its order, dated February 14, 1944, the joint board denied appellant any relief. This order states that the board considered the "complete record" of the claim, and all the evidence offered. The action of the board was proper. Hearings before the department are not controlled by technical rules. *Otter v. Department of Labor & Industries,* 11 Wn. (2d) 51, 118 P. (2d) 413.

When the matter reached the superior court, claimant (to whom we shall now refer as appellant) demanded a jury, whereupon respondent employer, Aberdeen Plywood Corporation, moved to dismiss the action upon the record, for the reason that appellant had failed to present evidence sufficient to overcome the presumption of correctness attaching to the order of the joint board of the department.

It was agreed by all the parties that, in passing upon respondent employer's motion to dismiss, the court should consider the record made before the department and from that record determine whether or not, as matter of law, the record disclosed sufficient evidence to take the case to a jury upon appellant's behalf.

The matter was argued and submitted to the court for decision.

September 15, 1944, the court granted the motion to dismiss and entered judgment dismissing the case. The judgment recites the employer's motion to dismiss, and that the department of labor and industries joined therein, and that

" . . . the said cause having been and being set for trial by jury and the parties having stipulated that for the purpose of said motion and the decision thereof that the court should consider the Departmental record on file herein and the said Departmental record having been offered in evidence for consideration of the court in connection with said motion and having been received in evidence for said purpose pursuant to stipulation of the parties, and the court having considered said motion and said Departmental record and the evidence and the exhibits . . . ,"

followed by an order granting the motion to dismiss and dismissing the action, appellant being allowed her exception.

After the entry of the judgment, appellant moved for a new trial and, upon denial of her motion, appealed to this court from the judgment dismissing her action.

Error is assigned upon the court's ruling that the record contained no substantial evidence sufficient to take the case to a jury, upon the entry of judgment dismissing the action, and upon the denial of appellant's motion for a new trial.

As above stated, appellant appealed from an order of the joint board denying her any relief whatsoever. She contends that the record shows that by the accident she sustained a permanent disability by reason of impairment of the vision of her right eye. She does not contend that it would be within the province of the jury or the superior court to fix the degree of disability which she suffers as the result of the accident; but she does contend that, upon the record made before the department, she is entitled to a verdict of the jury upon the question of whether or not she has in fact suffered any permanent disability as the result of the industrial accident which she sustained. If the verdict of the jury should be in her favor upon this proposition, appellant contends that the superior court should remand the case to the department for the purpose of determining the degree of disability suffered by appellant.

Respondent department argues that the evidence concerning any permanent injury which appellant claims to have suffered was subjective only; that in such a situation, injury may be proven only by the testimony of expert witnesses, and that the testimony of lay witnesses affords no legal basis sufficient to support a finding of physical injury to a human being when the injury is, in its nature, subjective and nowise objective.

Respondent employer argues that the question here presented is similar to that which inheres in an appeal from a judgment entered pursuant to the granting of a motion for judgment in favor of one party notwithstanding the verdict of a jury in favor of the opposing party. That is not exactly the situation here presented, as in the case at bar no jury has rendered a verdict. This situation, as above stated, is

more nearly analogous to the question raised on a defendant's motion to dismiss at the close of all the evidence.
Respondent employer calls our attention to the case of *Alfredson v. Department of Labor & Industries,* 5 Wn. (2d) 648, 105 P. (2d) 37, in which this court discussed Rem. Rev. Stat., § 7697 [P. P. C. § 704-1], as amended by Laws of 1943, chapter 280, p. 879, § 1, which contains a provision carried over from earlier statutes to the effect that a departmental ruling shall be deemed *prima facie* correct. In the case cited, this court affirmed a judgment of the superior court, entered upon the verdict of a jury reversing an order of the department. In the course of the discussion of the effect of the statute declaring the order of the department *prima facie* correct, we said: "The court, of course, may pass upon the sufficiency of the evidence to take the case to the jury."

In entering the judgment appealed from, in the case at bar, the trial court did pass upon the sufficiency of appellant's evidence to take the case to a jury.

The section of the statute above cited, as amended, also contains the following, referring to appeals from the department to the superior court:

"If the Court shall determine that the Department has acted within its power and has correctly construed the law and found the facts, the decision of the Department shall be confirmed; otherwise, it shall be reversed or modified. . . ."

We hold that the order appealed from in the case at bar falls within the foregoing portion of the statute. As we are of the opinion that the order now before us on appellant's appeal was correctly entered, on the facts before the joint board, we find it unnecessary to consider whether that order should be entitled to carry with it any additional weight because of the statutory provision first above referred to.

By appealing from the adverse order of the joint board, appellant, of course, assumed the burden of proof and of making a case to be submitted to a jury. *Kavaja v. Department of Labor & Industries,* 126 Wash. 284, 218 Pac. 196; *Pavlinovich v. Department of Labor & Industries,* 158

Wash. 374, 290 Pac. 876; *Boyer v. Department of Labor & Industries,* 160 Wash. 557, 295 Pac. 737; *LaLone v. Department of Labor & Industries,* 3 Wn. (2d) 191, 100 P. (2d) 26; *Ivey v. Department of Labor & Industries,* 4 Wn. (2d) 162, 102 P. (2d) 683; *Weinheimer v. Department of Labor & Industries,* 8 Wn. (2d) 14, 111 P. (2d) 221; *Radich v. Department of Labor & Industries,* 10 Wn. (2d) 107, 115 P. (2d) 1022.

The trial court had before it in written form all of the evidence which could be considered by the jury and upon which, coupled with the statutory provision above referred to, it would return its verdict.

Testifying before the joint board, appellant stated that, prior to the accident upon which her claim was based, her vision was good, and that subsequent to the accident, and after the inflammation in her eye had been cured, her right eye had become "foggy," and her vision was imperfect. This was competent testimony on the part of appellant, but was subjective evidence only. The evidence that a foreign substance had lodged in her right eye, and that the eye had become swollen and inflamed was, of course, objective evidence. But, after the removal of the foreign body from her eye and the reduction of the inflammation, appellant's testimony that her vision was less clear than it had been before the accident was subjective. No objective evidence was introduced before the joint board, supporting appellant's contention that her vision had deteriorated after the accident.

Concerning the injury to her eye, appellant testified, in response to a question as to whether or not the inflammation had left her eye:

"Yes, and then I didn't have swollen eyes like I used to have. In three days mine eye was real clear, but he treated me, he told me to come every second day or every day, was it? So finally mine eye get a little better, only I didn't see out of that eye, I got a scar on the front or right in the middle and all the time I look, I look like through the foggy. I don't see clear."

Appellant testified that the eye continued to cause her pain, and that it was worse when she worked on "the grave-

yard shift." On cross-examination, she again testified that the vision of her right eye was still "foggy," and that prior to the accident her vision had always been good. No witness, other than appellant, testified as to the condition of appellant's eye prior to the accident. A friend of appellant testified that she saw appellant while her eye was inflamed and swollen, and that appellant had told her that she had gotten something in her eye at the plant. It is, of course, not denied that a foreign substance became lodged in appellant's right eye, with the result that the eye became sore and inflamed. Mrs. Bessie M. Wells testified that she was a friend of appellant; that appellant had never complained to her about her eyes prior to the injury; that she had complained since that time. Frank R. Larshany testified that he was acquainted with appellant; that appellant complained of the injury to her eye, but, since the injury, she had complained of poor vision and headaches. Mrs. Bonita Gupton gave similar testimony.

Dr. F. N. Berken was called as a witness by the department. The doctor testified that he had been a practicing physician for twenty-eight years; that he specialized in matters concerning the eye, ear, nose, and throat; that May 24, 1943, he was consulted by appellant and signed a report of her accident as her attending physician; that in the course of his examination of appellant's right eye, he discovered two scars on the cornea, "old, healed scars"; that he could find no evidence that these scars bore the least relation to any injury received May 6, 1943; that the scars "looked like old, healed scars"; that he found no foreign body in the eye, and that, from the appearance of the scars, he thought that they could not have resulted from an injury received so short a time as eighteen days prior to his examination. The doctor further testified, referring to the scars, as follows:

"A. That might have been a result of some injury or from infected ulcers, and I asked the history of her to see and the history was that she had gotten a foreign body in the eye. The eye was not intensely irritated and the foreign body, if it was in there, and supposedly it had been in there, over that time, should have irritated greatly. That, together with the fact that they were very old, healed, scars, made me

conclude that those scars had been there before the injury. Q. Longer than the eighteen days time? A. Yes. Q. Would you hazard an estimate as to how long those scars were there? A. No, I wouldn't do that, because that could be way back to childhood or that could date back anywhere to as long as two months or so, or three or enough time for that to get a very healed scar. Q. You don't think it is possible even though a person may have a capacity of healing fast after an injury that this could have healed up in that short time? A. It's just extremely unlikely. That is all. Q. But it is possible? A. Yes. Q. If you were positive that she had never had an injury to the eye before and have knowledge that she had one eighteen days before, you would come to the conclusion that those scars might have been caused by this foreign body eighteen days before? A. No. I would sure question that a lot. It just doesn't look reasonable. Q. And yet it's possible? A. Yes."

Dr. O. L. Adams, a witness called by the department, testified that he had practiced his profession since 1906; that he also specialized in matters affecting the eyes; that he had examined appellant's right eye May 25th and that he found a small foreign body under the right upper lid, and that he also found old scars on the cornea which, in his opinion, had no relation to any injury received May 6th or to the foreign body which he removed from appellant's eye. The doctor further testified that he treated appellant's eye on four different occasions, the last June 3d; that he tested her eyes, and that

"Her vision in the right eye uncorrected was 20-80; left eye, 20-30. Under correction; right eye 20-15; left eye, 20-20. Q. Then, in other words, Doctor, correction would bring her eyes to even better than normal vision? A. Well, in the right eye, 20-15, that is better than 100%. Left eye there was down to 20-20 or 100% vision."

Dr. Adams testified that while he could not form an opinion as to how old the scars that he found were, "they were certainly not recent"; that the foreign matter which he removed from the eye was "not on the cornea whatever"; that it was on the right upper lid, which irritated her eyeball, and that, in the opinion of the witness, the irritation was the

only injury which appellant sustained. The witness further testified as follows:

"Q. You don't think that she suffered any disability to the eye after the foreign matter was removed? A. None whatever. Q. And in your opinion now, if she wore glasses, her vision would be perfect? A. Of course, I don't know what the condition is since June the 3rd. Her vision would certainly be perfect when I refracted her between those four days of May the 24th and June the 3rd. I don't recall which day. Her vision then was above 100% in the right eye, which was her injured eye. That was with refraction. The correction would probably bring that left eye to 20-15. There is no disability connected whatever with her visual acuity."

In the case at bar, there is, of course, objective testimony to the effect that appellant suffered pain caused by the lodging in her right eye of some foreign substance. Appellant testified that she was not aware of having received any prior injuries to her right eye. She could not account for the presence of the scars on the cornea, unless they were occasioned by the injury which she received May 6, 1943. Appellant's testimony that, since the closing of her claim as above stated, the vision of her right eye had been impaired, and that she suffered headaches caused by some defect in that eye, was purely subjective. Statements by her friends that, after the closing of her claim, she told them that her eye caused her trouble, are also purely subjective testimony.

The only expert witnesses who testified before the department were the two doctors whose testimony is referred to above. These were doctors who had been consulted by appellant as her physicians. They were, however, called before the joint board as witnesses for the department.

The case of *Radich v. Department of Labor & Industries*, 10 Wn. (2d) 107, 115 P. (2d) 1022, on the facts, presents many points of similarity to the case at bar. While, on appeal by the claimant to the superior court from the department, the case was heard by the court, sitting without a jury, and the court was, consequently, the trier of the facts, some of the language used by this court, in its opinion re-

versing the judgment of the trial court which reversed an order of the department, is pertinent here. In the case cited, the claimant, July 23, 1937, while engaged in industry, was struck in the right eye by a flying fragment of wood. The department allowed his claim for medical treatment and closed the claim without any allowance for time loss or permanent partial disability. A year or so later, the claimant applied for reopening of the claim on the ground of aggravation. On appeal, the joint board granted a rehearing, at which the claimant testified that he was struck in the eye with great force by a flying fragment of wood about as large as a kernel of corn. He further testified that prior to the accident both his eyes were functioning normally, but at the time of application for the reopening of his claim, his right eye was practically blind.

Two physicians testified, one called by claimant, the other by the department. The latter had treated the claimant's eye shortly after the accident and testified that the injury was not serious, and that, at the time he treated the eye, a cataract was already growing thereon. The physician testified that he could not state how long the cataract had been forming, but that, in his opinion, the cataract could not have been caused by the injury.

The physician called by the respondent testified that the cataract might have been caused by the injury and stated, in response to a question:

" 'It certainly is a possible cause because he has a normal left eye and gives a history of injury to the right eye, so I can't say that the most likely cause was trauma but it has to be admitted as a possible cause.' "

Both doctors stated that, at the time of the hearing, respondent was practically blind in his right eye.

This court quoted from the case of *Cole v. Department of Labor & Industries*, 200 Wash. 296, 93 P. (2d) 413, the following:

" 'It is not sufficient that a claimant show a mere possibility that the accident and its accompanying injury caused or contributed to the death of the injured person. The

burden is on the claimant to show, by a preponderance of the evidence, that the injury was a proximate or a contributing cause of death. [Citing cases.]' "

In the *Radich* case, of course, it was admitted that, at the time of the hearing before the joint board, the claimant had practically lost the sight of his right eye. There was objective evidence as to that. In the case cited, this court held that, while the testimony of the claimant had some bearing on the question, the "cause must be determined largely by the medical witnesses," and that the testimony of the claimant was insufficient to overthrow the finding of the department and the testimony of the two doctors. The case is not controlling here, as it was not a case tried to a jury, while in the case at bar, the evidence must be considered in the light of the fact that appellant here had demanded a jury trial. The case, however, has some bearing upon the question of whether or not appellant presented a case which should be submitted to a jury.

In the case of *Stevich v. Department of Labor & Industries*, 182 Wash. 401, 47 P. (2d) 32, it appeared that the injured workman, after having received certain allowances on account of an injury, including two allowances for permanent partial disability, applied for reopening of his claim and for further relief. From an adverse ruling by the supervisor, claimant appealed to the joint board, and from the board's order, refusing to open the claim, an appeal was prosecuted to the superior court. The case was heard before the court, sitting with a jury, which returned a verdict in claimant's favor, and from a judgment entered upon this verdict, the department appealed.

The superior court had properly instructed the jury that unless the claimant's condition had grown worse since a certain date, no basis existed for a verdict in his favor. The cause was presented to the jury solely upon the written record made before the department. Testifying before that body, the claimant had stated that he was unable to work, and, in answer to a question by his counsel: "Do you feel stronger than you did a long time ago?" he answered, "No, I feel worse and weaker." Seven doctors testified before the

joint board, two called by the claimant and five by the department. This court found nothing in the testimony of any of the physicians which arose "to the dignity of competent evidence to the effect that respondent's condition became aggravated after the closing of his claim, . . ." It was held that the verdict was without substantial support in the record, and the judgment appealed from was reversed, with directions to dismiss the action.

This court has many times, in labor and industries cases, considered the matter of the distinction between subjective and objective testimony, and the quantum of testimony necessary either to carry a case to a jury or to support a verdict in favor of the claimant.

In the case of *Cooper v. Department of Labor & Industries*, 20 Wn. (2d) 429, 147 P. (2d) 522, decided April 11, 1944, this court reversed a judgment of the superior court based upon the verdict of a jury in favor of a claimant, who had appealed to the superior court from an order denying him an additional award on the ground of aggravation. The claimant testified that his back hurt him, and that his condition had become worse since his claim was originally closed. His wife testified to the same effect. But this court held that there was no testimony concerning any objective symptoms which supported claimant's contention that his condition had become aggravated. Concerning the testimony of the claimant's wife, we held that her testimony, being that of a lay witness, was entitled to no greater consideration than was the testimony of the claimant to the effect that his condition was " 'worse' than when the claim was closed." Several physicians testified, and, concerning this testimony, we said:

"There is no evidence of even one objective symptom on which to base an opinion that, since respondent's claim was closed, his physical condition had become aggravated due to the injury for which he had already been compensated. Respondent's physician based his opinion as an expert upon subjective symptoms found, they being the things told him March 29, 1942, by respondent while being examined by the physician for the purpose of testifying as an expert witness. The examination was not for the purpose of treatment. Such

things are none the less hearsay when they come from a physician than if from a layman. A physician may not base an opinion as to causation of a physical condition on subjective symptoms and self-serving statements."

The judgment of the superior court was reversed, with instructions to dismiss the action.

The *Cooper* case was cited and followed in the case of *Roellich v. Department of Labor & Industries*, 20 Wn. (2d) 674, 148 P. (2d) 957, in which this court also reversed a judgment of the superior court entered upon the verdict of a jury, which judgment reversed an order of the department.

In the recent case of *Omeitt v. Department of Labor & Industries*, 21 Wn. (2d) 684, 152 P. (2d) 973, in which a judgment of the superior court, entered upon the verdict of a jury increasing a departmental award in favor of the claimant, was affirmed, it was assumed that if the testimony introduced before the jury by the claimant had been merely subjective, the verdict of the jury would have lacked support in the record. This court, however, held that some of the testimony concerned objective matters, and that the verdict of the jury was supported by the record. The court noted that the attorney for the department had not objected to the admission of evidence offered by the claimant, but had cross-examined the witnesses concerning the matters to which they testified. This court further noticed that counsel for the department had not moved to strike any portion of the claimant's evidence, and that no challenge to the sufficiency of the evidence was interposed.

In the case of *Romeo v. Department of Labor & Industries,* 19 Wn. (2d) 289, 142 P. (2d) 392, this court reversed a judgment of the superior court, entered upon the verdict of a jury, reversing an order of the department denying a claim for disability resulting from an occupational disease. Plaintiff's original claim having been denied, he appealed to the superior court, before which he was successful, as above stated. Apparently it was admitted that the claimant was suffering from sinus trouble. The question to be determined was whether or not he was suffering from an occupational

disease, and that his "disease or infection arose naturally and proximately out of his employment."

Without determining certain questions of law, this court held that:

"There is an absence of substantial evidence to support a verdict that the disease or infection from which respondent suffers was contracted through the inhalation of dust in an industry where intense dust prevails or that his disease or infection arose naturally and proximately out of his employment."

Continuing, the court said:

"While there is some showing that there was a great quantity of dust in that portion of the plant where respondent was employed, there is no showing that respondent's respiratory condition naturally and proximately resulted from his employment. At the most, the testimony of one of the physicians goes no further than that the respondent's exposure to the dust incident to his occupation delayed respondent's recovery from sinus trouble, from which he has suffered a number of years. Respondent's condition cannot be classed as an occupational disease as it was brought about by conditions to which all laborers, regardless of their occupation, are exposed."

The judgment of the superior court was reversed, with directions to affirm the decision of the joint board.

The following of our decisions are in point upon the weight to be given expert medical testimony, or the lack of such testimony, on appeals from orders of the department. *Boyer v. Department of Labor & Industries,* 160 Wash. 557, 295 Pac. 737; *Zoff v. Department of Labor & Industries,* 174 Wash. 585, 25 P. (2d) 972; *LaLone v. Department of Labor & Industries,* 3 Wn. (2d) 191, 100 P. (2d) 26; *Weinheimer v. Department of Labor & Industries,* 8 Wn. (2d) 14, 111 P. (2d) 221.

Appellant strongly relies upon the case of *Otter v. Department of Labor & Industries,* 11 Wn. (2d) 51, 118 P. (2d) 413. From the opinion in that case, it appears that the workman suffered an industrial accident, for which he was allowed time loss; on reopening he was allowed further time loss and ten degrees for permanent partial disability; later

a further time loss and a second award for permanent partial disability were allowed. The last order he appealed to the superior court, where the case was submitted to a jury, which found that he was temporarily totally disabled. The court entered judgment upon this verdict, reversing the order of the joint board, and remanding the claim to the department for allowance of compensation on the basis of the jury's finding. From this judgment the employer appealed to this court.

Our opinion does not discuss the evidence in detail, but attention is called to the fact that medical experts testified before the joint board on behalf of the respondent. We did not refer to any testimony before the joint board as being either subjective or objective. One of the assignments of error before this court was based upon the refusal of the superior court to give an instruction differentiating between the testimony of nonexpert and medical witnesses. It was held that the trial court committed no error by refusing to give the instruction referred to.

The questions presented and decided are so entirely different from the question presented in the case at bar that the opinion in the case cited is nowise controlling.

In the case at bar, the objective testimony goes no further than to support appellant's claim that on May 6, 1943, while engaged in her employment, some foreign substance lodged in her right eye; that her eye became sore and inflamed, but that, upon removal of the foreign substance, the inflammation disappeared. Appellant's testimony that, since the inflammation has left her eye, the vision of that eye has deteriorated, whereas her vision prior to the accident was clear, is, of course, upon the record before us, subjective testimony only, as no evidence, save her own statements, appears in the record which supports her testimony. On the contrary, the two doctors, whom she herself selected and consulted, testified that they found nothing which indicated that the accident had caused any loss of vision whatsoever. The fact that Dr. Berken testified that, in his opinion, it was possible that the scars which he found upon the cornea of appellant's eye might have been caused by an

injury suffered eighteen days prior to his examination, is not sufficient, when considered with his entire testimony, to present a case which would support a finding in appellant's favor. *Stevich v. Department of Labor & Industries, supra.*

Dr. Adams, who removed the foreign body from appellant's eye, testified definitely that, in his opinion, the scars which he observed had no relation to the injury.

██ ██ While appellant's testimony was that, after the injury, the vision of her right eye was "foggy," and poorer than prior to the accident, this testimony does not constitute substantial evidence that the present condition of her eye was due to the accident. That the presence for eighteen days of a small foreign body under an eyelid, after the removal of the body, would leave the vision of the eye permanently decreased, would be a matter concerning which experts, who had examined the eye, would be the only persons who could testify with scientific knowledge. 20 Am. Jur. 719 *et seq.*

The rule is that witnesses of ordinary mentality and experience, from observation and obvious facts of which they have knowledge, may testify concerning the existence of a physical condition, but the cause of such an affliction as a lessened vision would generally be, and certainly is in the case at bar, a scientific question upon which the testimony of expert medical witnesses is essential. In this case, the only expert testimony in the record negatives appellant's claim that her lessened vision is due to the accident. Granting that the unaided vision of appellant's right eye is less than normal, and that appellant might testify that such vision was worse than it was prior to the accident, her claim that this condition is a result of the industrial accident which she suffered, which claim is supported by no evidence whatsoever, considered together with all the evidence in the record, is not, under the rule laid down in our decisions in cases arising under the workmen's compensation acts, sufficient to constitute substantial evidence on the question presented in the case at bar, which appellant contends should be submitted to a jury.

The trial court correctly ruled that the departmental record, which was brought before that court on appellant's

appeal from a departmental order denying her further relief, failed to disclose evidence sufficient to carry the case to a jury.

The trial court properly granted the motion to dismiss, and the judgment appealed from is affirmed.

MILLARD, STEINERT, JEFFERS, and GRADY, JJ., concur.

