[No. 27075. Department One. December 29, 1938.]

DOGUE FERGUSON, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*[1]

*Edgar S. Hadley,* for appellant.

*The Attorney General, J. A. Kavaney* and *T. H. Little, Assistants,* for respondent.

[1]Reported in 85 P. (2d) 1072; 90 P. (2d) 280.

HOLCOMB, J.—The joint board of the department of labor and industries affirmed the action of the supervisor of industrial insurance in refusing to reopen appellant's claim, and upon appeal to the superior court a judgment of dismissal was entered. This appeal resulted.

July 11, 1933, while appellant, who was at that time about fifty-two years of age, was working at a sawmill as a planer for the Northwest Lumber Company, two pieces of timber fell upon a piece of lumber, 6 x 6, and twenty-two feet long, which appellant was lifting. Thereupon, claimant suffered an acute pain in his back and strained his back on the right side. It also appears that appellant at that time had an infected hand occasioned by abrasions received in the course of his work, and that he had contracted a poison oak infection.

The supervisor concluded that, in addition to the injury, appellant was suffering at the time of the accident from a preexisting disease, osteo-arthritis. After a segregation of the arthritis antedating the injury, claimant was awarded time loss by the department for twenty-three days with no permanent partial disability, and his claim was closed August 9, 1933.

July 8, 1936, appellant made application to reopen the claim on the ground of aggravation of the injury of July 11, 1933. August 6, 1936, the reopening of the claim was denied by order of the supervisor. August 28, 1936, claimant, feeling aggrieved by the entry of the above-mentioned order, filed an application for a rehearing before the joint board of the department, which was granted. The joint board entered an order on September 7, 1937, sustaining the supervisor.

This appeal presents a single question, namely, whether, under the evidence, appellant is suffering

from an aggravation by reason of the injury of July 11, 1933, or solely from the progressive course of the disease, arthritis.

As we view it, the question of whether or not claimant's condition, in so far as his injury of 1933 affected the same, became aggravated after his claim was closed on August 9, 1933, and whether the aggravation, if established, and the effects flowing therefrom, continued to be felt at the time he applied for the reopening of his claim in 1935, must be determined primarily from the testimony of medical experts. Claimant testified that he has never been entirely free from pain in his back since August 9, 1933. All of the medical testimony confirms the claimant's testimony to the effect that he is only able to exercise the muscles in his back to a very limited extent for bending and stooping, and that the movement of the muscles in the back causes severe pain.

It is admitted by all of the medical witnesses that claimant is presently suffering from arthritis in his back, and they all concede that he is not able to carry on any type of heavy manual labor which requires prolonged standing, bending, or lifting. Appellant has worked only intermittently since August, 1933, partly because of his physical condition and partly by reason of his inability to obtain employment. The medical experts also agree that a comparison of the X-rays taken in 1933 with those taken in 1936 after the petition was filed to reopen the claim on the ground of aggravation, shows there is on claimant's back an increase of bony deposits which is indicative of the progress of the disease, arthritis.

We believe that claimant had arthritis prior to the 1933 injury. The joint board, however, concluded that the testimony preponderantly proved not only that appellant had arthritis at the time of the 1933

injury, but also that the preexisting disease was active prior to the 1933 injury. We cannot agree with that conclusion. The medical witnesses recognized that a trauma may light up existing arthritis. We are satisfied that the arthritic condition was dormant until the 1933 injury, and that the injury of 1933 lighted up the existing arthritic condition.

The medical witnesses conceded that arthritis is often a progressive disease, and that a person suffering therefrom may have alternative periods when the disease is patent and active and periods during which it is latent and quiescent. The medical testimony also indicated that periods of remission and exacerbation are especially characteristic of arthritis as one advances in years beyond middle age, and at that period in life the recurrence of the active periods of the disease tend to come on more frequently and from slighter causes.

Two physicians testified in favor of claimant, and were of the view that his present condition was a direct sequel of the 1933 injury, which had rendered a quiescent arthritic condition continuously active up to the present time.

One physician examined claimant on October ·12, 1936, and, after acquainting himself with the history of the case, concluded that appellant presented a typical picture of arthritis involving the spine, which had been lighted up by his injury in 1933. He found the X-rays showed marked arthritic changes. He testified in part:

"A. I think the wrenching of the back produced a lighting up of the chronic preexisting arthritis, which before the accident was in a quiescent condition. Q. Would you say that the arthritic condition prior to that wrenching was—latent or quiescent, rather than active? A. Yes; I think it was. Q. Since the wrenching occurred has it been latent or quiescent?

A. I think it has been active since that time. Q. Will you say continuously active since that time? A. According to the history it has, yes."

Upon cross-examination, he was asked if it was usual for such a lighted up condition of this kind to return to its normal condition in much less than three years. He replied that,

"Some of them do, and some of them persist,—that is the unfortunate thing; we cannot tell what will happen in any particular case. We know some of them recover with or without treatment, and others do not."

Another physician examined claimant on June 2, 1937, and on direct examination was asked how long an injury lighting up arthritis continues, and if such an injury continues on or ordinarily abates. He replied:

"A. There is no general rule, Mr. Davies, because each case varies in itself, but many of them will clear up in a few weeks time, some of them a few months time and some of them might after a year or two; but many of them—but then again a certain percentage never do clear up. Q. Then it is nothing unusual, if I understand you correctly, for a man who has arthritis, although it is not disabling, and he receives an injury and lights up the arthritis, it is not unusual for it to continue the rest of his life; not unusual for it not to abate? A. In a certain percentage of cases, yes, it will continue."

On the other hand there is medical testimony to the effect that claimant's existing condition and disability are not due to an aggravation of the 1933 injury, but rather to a progressive stage and course of the disease, arthritis, which antedated the injury. A commission of three doctors, appointed by the department, so concluded. None of these physicians saw or examined claimant in 1933. One physician

examined him in July, 1935, and again on July 22, 1936, and the other two physicians first examined him on July 22, 1936.

One of these three doctors testified that the injury sustained in 1933 would aggravate the arthritis, but such aggravation as was occasioned by the injury would be temporary and not permanent in character.

Another testified the injury did not cause the bony growth, but stated, however, that an irritation would increase the rate of progress of the bony change. He conceded an injury may temporarily aggravate an arthritic condition, and to recover from the immediate effect of the injury sustained would require a minimum of ten days and a maximum of two or three months.

The third doctor on the commission treated appellant in July, 1933, for a poison oak infection only, but at that time appellant did complain to this physician about the aches and pains in his back. This doctor examined claimant on December 12, 1936, and was of the opinion that claimant was not in need of any medical treatment by reason of his injury in July, 1933.

Another doctor treated appellant in July, 1933, for slivers in his fingers and hand, and appellant told this physician at that time that he had been experiencing trouble with his back, and requested him to tape it to relieve the pain. This was done. This doctor admitted he was not qualified to interpret the X-ray pictures so as to determine the progress of the disease, but concluded appellant's present condition did not result from the accident of July, 1933.

It appears that appellant had pneumonia at one time and has been suffering from chronic dysentery for a number of years. One doctor testified that dysentery is a frequent source of arthritic infection,

and another testified that dysentery may have a pronounced effect upon arthritis. It is conceded that there are many causes of arthritis, but the question to be determined here is not what caused the arthritis, but whether the lighted up condition, occasioned by the 1933 injury, still continues to exist.

This case presents an extremely difficult factual situation even for medical experts to determine with precision. The mere number of witnesses is, of course, not controlling. The testimony of the medical witnesses, as to whether or not appellant is suffering presently from the progressive course of the disease or from an aggravation occasioned by the 1933 injury is sharply conflicting, and the different conclusions reached by each have much in reason and logic to support them. Hence, we must determine the weight of the testimony in the light of all the attendant circumstances.

■ We are satisfied, as hereinbefore indicated, that the injury of 1933 lighted up a dormant preexisting arthritic condition. It also appears that claimant has experienced recurring pain in his back since the claim was closed. It is conceded by the medical testimony that a slight injury may have far-reaching effects upon a person of claimant's age and condition. While the bony structure may increase with the progress of the disease, it is also conceded that an irritation might materially accelerate the change in bony structure. The cessation of the aggravation, occasioned by lighting up a dormant arthritic condition, has not been established by any satisfactory objective data, and it appears that the effects of the injury have continued to be felt by appellant since his claim was closed.

Where claimant's arthritic condition is inactive or dormant and then is lighted up and continues in that

state, then his condition is due to the accident. *Brittain v. Department of Labor & Industries,* 178 Wash. 499, 35 P. (2d) 49; *McGuire v. Department of Labor & Industries,* 179 Wash. 645, 38 P. (2d) 266. The only question here is whether that lighted up con-. dition has continued to exist.

We recognize that the decision of the department is *prima facie* correct, and that the burden is upon the claimant to overcome it. All of the testimony was taken before examiners, and none of it was taken before the joint board. Rem. Rev. Stat., § 7697 [P. C. § 3488], provides the decision of the department shall be *prima facie* correct, but it cannot have the same presumptive force and effect when the testimony is taken before examiners, and a transcript thereof is submitted to the joint board, as when it is taken before members of the board. *Sweitzer v. Department of Labor & Industries,* 177 Wash. 28, 30 P. (2d) 980; 34 P. (2d) 350; *Dry v. Department of Labor & Industries,* 180 Wash. 92, 39 P. (2d) 609.

Considering the lighting up of the arthritic condition, the age of claimant, the recurrence of pain intermittently following the closing of the claim, the active and quiescent states of this malady, the nature of the arthritic condition, his general physical condition, and conceding that the disease is progressing, a careful study of the entire record and of all of the attendant circumstances convinces us that the evidence preponderates against the findings of the department, and that the *prima facie* correctness of the departmental decision has been overcome.

The judgment is therefore reversed, and the cause is remanded to the superior court for the entry of judgment directing the supervisor to reopen the claim for aggravation of the injury of 1933 from the date of

the filing of the claim. *Hall v. Department of Labor & Industries,* 183 Wash. 486, 48 P. (2d) 923.

MAIN, BLAKE, and ROBINSON, JJ., concur.

STEINERT, C. J. (dissenting)—The judgment in this case should, in my opinion, be affirmed, as the result of the application of the statutory mandate which provides:

"In all court proceedings under or pursuant to this [workmen's compensation] act the decision of the department shall be prima facie correct and the burden of proof shall be upon the party attacking the same . . ." Rem. Rev. Stat., § 7697 [P. C. § 3488].

The record in this case, as I view it, demonstrates the wisdom and need for just such a statutory rule and illustrates the propriety of sustaining the decision of the department and the judgment of the trial court.

Appellant came to the state of Washington about June 15, 1933. Prior to that time, and over a long course of years, he had been in many parts of the country and had at various times worked as a millman doing manual labor. In 1908 he was in the navy and had taken a trip around the world.

After his arrival in Washington in June, 1933, he worked for about a week as a woodcutter. On Tuesday morning of July 11, 1933, he commenced work as a planer in a mill at Underwood. At two-thirty in the afternoon, he sustained the alleged injury which, in the report signed by him, was described as follows:

"Was lifting 6 x 6—22 ft. long—feeding planer strained back in right side also contracted poison oak and has infected hand from cuts received in his work."

Appellant continued his work to the end of the day and likewise to the end of the week. On July 15th he, for the first time, visited a doctor, who taped his back and gave him antiseptics for his hands. A few

days later, appellant went to a hospital where another doctor treated him for poison oak.

Appellant's claim was recognized by the department and compensation for time loss to August 7th was paid. The claim was thereupon closed, upon a segregation for preexisting arthritis, according to the provisions of Rem. Rev. Stat., § 7679 [P. C. § 3472] (1). No appeal was taken from the closing order.

Almost three years later, July 8, 1936, appellant made application to reopen his claim. The supervisor denied the application. Appeal was taken to the joint board, which, after the production of evidence, affirmed the order of the supervisor. On appeal to the superior court, a hearing was had upon the departmental record, after which the court made findings from which it concluded that the decision of the department was correct. Judgment was entered in favor of respondent.

As stated in the majority opinion, the single question before us is whether, under the evidence, appellant is suffering from an aggravation by reason of the injury of July 11, 1933, or solely from the progressive course of the disease, arthritis.

It is true, as stated by the majority, that all the medical witnesses admitted that appellant is presently suffering from arthritis in his back and that he is not now able to carry on heavy manual labor. The majority concedes that appellant was afflicted with arthritis prior to his injury, but concludes, from the evidence, that the arthritic condition was dormant until, and was lighted up by, the 1933 injury. My study of the record does not enable me to reach that conclusion.

Two physicians testified for appellant workman. The material portions of their testimony favorable to appellant are quoted in the majority opinion.

The first of these witnesses saw the appellant only once; that was on October 12, 1936. The answers which the witness gave, as quoted in the majority opinion, were in response to a question, partly hypothetical, in which he was required to *assume* that the appellant had "had no trouble of any kind with his back before he wrenched it on July 11, 1933." The witness conceded that any previous condition to which he had testified was based entirely upon the history given him by appellant. Upon cross-examination, he testified:

"Q. If this man had been having any trouble with his back prior to July 11, 1936, would you still think this was a lighting up of this arthritic condition? (Question read.) A. That would depend entirely on his condition before; if he had no trouble before he *could* have a lighting up; and if he had more trouble after the accident *it would be considered an* aggravation." (Italics mine.)

When shown the X-ray pictures taken at various times since August 7, 1933, he admitted that they showed about the same condition, and that, "It is nothing more than the ordinary progress of the disease."

The other physician saw appellant only once, namely, on June 2, 1937. His testimony, as quoted in the majority opinion, was likewise in response to a question which was partly hypothetical and was based on the history as given him by appellant. He stated:

"*From his history* and his examination, and general physical findings, it was our conclusion that this man's trouble at the present time was coming chiefly from an arthritis; but that in view of the fact that *he said* that he was working steady before the accident and it didn't bother him then, *our conclusions* were that this accident caused an exacerbation or stirring up of this arthritis." (Italics mine.)

He stated further:

"A. Well, the patient states, when I asked him, he said he had never injured his back before; furthermore, he stated he had never suffered with arthritis or rheumatism or lumbago before in his back—before this accident—and that he had never had any treatment for back or hip trouble. All the previous injuries he said he had before were to his hands and feet. He said he had pneumonia in 1932; otherwise, he said he hadn't had any other trouble except for this diarrhea in October, 1935—this diarrhea you were referring to."

On cross-examination, he stated:

"Q. But your diagnosis of lighting up of an old arthritis by this injury is dependent entirely on the history, is it not, Doctor? A. Yes, because I wouldn't know whether he had been disabled or not from working even. I just have to take his word for it in the record. I don't know whether there would have been an accident."

He further testified that there were various kinds of arthritis, traumatic, gonorrheal, syphilitic, tuberculous, and infectious, and also a certain group the cause of which is unknown.

It is thus apparent that the testimony of those two witnesses was based upon an assumed history of the case. But there is another side to the story which the department was required and privileged to consider.

Upon direct examination, appellant testified:

"Q. Did you ever have any trouble with your back of any kind before 1933? A. Not that I can remember of. Q. Did you have any trouble with any of the joints of your body? A. Yes; I have had trouble with these here complications and the like of that. Q. I mean any persistent, preexisting trouble? A. No; I was always sound; I never lost a day's work in my life; that is up until the injury of 1933."

On cross-examination, he testified:

"Q. In July had you been hurt—prior to July 11th? A. I can't remember that. Q. You hadn't been to the Harbor View Hospital in Seattle prior to July 11, 1933? A. Yes; that brings it to my mind. I came in on a truck and getting off the truck I broke the nipple off an elbow. Q. When was that? A. The 1st of July I went up there." [This was ten days before the injury involved in this action.]

The injury of July 1st is of importance, not so much because of its seriousness, but rather because of the hospital records made at and subsequent to that time and thereafter introduced in this case. The hospital record clerk testified concerning the report made July 1st:

"Q. Are there any references as to complaints of pain in the back in July, 1933? A. Yes, there is. Q. What does the record show? A. It states pain in back. I think that is the right side. I am not sure. The last three years. Worse the last three months."

The witness further testified concerning the report of September 9, 1935:

"Q. What does the record show was the ailment for which he was treated? A. Lymphangitis. Q. Does that record reveal—referring to the notation of P. M. D.? A. I don't know what that was. Q. Previous medical— A. Yes previous medical history. Q. Is that what it means? A. I believe so. Q. And what does that show? A. Pyelitis, syphilis, cholera, influenza and prostatitis."

Concerning the record of February, 1936, the same witness testified:

"A. Had been examined previously. Condition of back varies with condition of bowels. Condition of stools commencing when he was in the Philippines and have been intermittent ever since."

Directly opposed to the conclusions drawn by appellant's two witnesses was the testimony of five physicians who testified for respondent.

One of these witnesses was the physician who attended appellant on July 15, 1933, four days after the alleged injury. He testified that he had taped appellant's back at that time because appellant had requested him to do it; that appellant told him that he had had trouble with his back before and that taping had relieved it. He further testified that, on a later occasion, appellant had come to his office for the purpose of getting the doctor "to help him get something out of the department," but that no treatment was administered at that time. This witness at the instance of the department, again examined appellant on December 12, 1936, and, at the hearing, testified that appellant's case was one of progressive arthritis, but that the accident of 1933 had nothing whatever to do with the present condition.

The next witness was the physician who on July 31, 1933, treated appellant for poison oak on his hands, face, and body. He gave no treatment for back complaint except to apply a hot-water bottle. This witness also examined appellant on December 12, 1936, and found a rigidity of the lumbar muscles and limitation of motion in the back. In his opinion, according to his testimony, appellant's present condition was not related to the accident of July 11, 1933.

Three other physicians were named by the department as a commission to examine appellant. Two of these had treated appellant in 1935 and 1936. The three physicians made a thorough examination in October, 1936, and at the hearing each testified that, in his opinion, appellant's present condition was not due to the injury, but was simply a part of the progress of the preexisting disease, arthritis. Two of these

physicians testified that the condition was probably due to some focal infection.

Summarizing the matter, we have (1) two physicians, who relied upon a history given by appellant, testifying that the injury lighted up a preexisting disease of arthritis, (2) the hospital records showing that appellant had been previously afflicted with diseases that are commonly accepted as a source of arthritis, and (3) five physicians, four of whom had previously treated appellant, testifying that the present condition was not related to the injury of July 11, 1933, but was due to the natural progress of a preexisting disease. The credibility of none of the physician witnesses was impeached. The preponderance of the evidence is, in my opinion, clearly in favor of the decision of the department. In any event, in a matter involving medical questions about which experts may in some degree differ, I do not see how this court can say that both the department and the trial court were in error.

I therefore dissent.

## On Rehearing.

[*En Banc.* May 4, 1939.]

Millard, J.—On July 11, 1933, Dogue Ferguson, while in the course of his employment at a saw mill as a planer, fell upon a piece of lumber which he was lifting, as a result of which his back and right side were strained. At that time, Ferguson's hand and back were infected by oak poisoning. On July 15, 1933, the injured man called on a doctor for treatment.

Ferguson's claim was filed with the department of labor and industries, July 22, 1933. His claim was recognized by the department and compensation paid August 9, 1933. In addition to the injury, the claimant was suffering, at the time of the accident, from a pre-

existing disease, osteo arthritis. After a segregation of the arthritis antedating the injury, the claimant was awarded time loss by the department for twenty-three days with no permanent partial disability, and his claim was closed. The letter of the department to the claimant of this disposition of his claim was given to the claimant, who, when he acknowledged receipt of the same, claimed to be entitled to an additional day's compensation. No appeal was taken from the order closing the claim. On August 17, 1933, Ferguson was examined by Dr. Ned D. Miller, who found him able to carry on a gainful occupation, and reopening of the case was denied August 21, 1933.

July 6, 1936, almost three years after the denial of his application to reopen the claim, Ferguson filed an application to reopen the claim on the ground of aggravation of the injury of July 11, 1933. The supervisor of industrial insurance rejected the application August 6, 1936, by an order which recited that, on July 22, 1936, the claimant was examined by a commission composed of three physicians, whose report was to the effect that the claimant was definitely disabled and was then unable to carry on any gainful occupation, but that the disability was due to preexisting osteoarthritis and not due to Ferguson's injury of July 11, 1933. That commission further reported that the disease was progressing in the usual manner, as shown by the X-ray, but that it was not an aggravation of his condition due to the injury.

The claimant's application of August 28, 1936, for rehearing before the joint board was granted, and hearings held October 20, 1936, April 8, 1937, May 13, 1937, and the final hearing was June 25, 1937. On September 7, 1937, the joint board of the department of labor and industries entered an order affirming the action of the supervisor of industrial insurance in refusing to

reopen the claim. Upon appeal therefrom to the superior court, a judgment of dismissal was entered. The claimant has appealed therefrom to this court.

The only question presented is whether, under the evidence, appellant is suffering from an aggravation by reason of the injury of July 11, 1933, or solely from the progressive course of the disease, arthritis.

The burden of proof is upon the party attacking the decision of the department, which decision, under the statute, Rem. Rev. Stat. § 7697 [P. C. § 3488], shall be *prima facie* correct. We are clear from our examination of the evidence, which is summarized as follows, that the appellant failed to sustain the burden imposed upon him by the statute:

The reports and testimony of all the medical witnesses are that appellant is now suffering from arthritis in his back, and that he is unable to carry on heavy manual labor. Appellant was afflicted with this disease prior to his injury July 11, 1933. His burden was to prove that the arthritic condition was dormant and was lighted up by the injury in 1933. In answer to a partially hypothetical question, in which he was required to assume that the appellant had not had any trouble of any kind with his back before it was injured on July 11, 1933, one medical witness testified that the arthritic condition was dormant and lighted up by the 1933 injury. He admitted, when shown the X-ray photographs taken at various times since August 7, 1933, when appellant's claim was closed upon a segregation for preexisting arthritis, that, "it is nothing more than the ordinary progress of the disease."

When the physician who testified for appellant saw the appellant only once and that was June 2, 1937, his testimony was also in response to a question which was partially hypothetical and was based on the history as given to him by the appellant, he stated that,

from the appellant's history and his examination and general physical findings, that he concluded that the appellant's trouble, at the present time, was due chiefly to arthritis; but that, in view of the fact that appellant said that he was working steady before the accident and the disease did not then bother him, he concluded that the accident caused a stirring or lighting up of the arthritis. He answered on cross-examination:

"Q. But your diagnosis of lighting up of an old arthritis by this injury is dependent entirely on the history, is it not, Doctor? A. Yes, because I wouldn't know whether he had been disabled or not from working even. I just have to take his word for it in the record. I don't know whether there would have been an accident."

His testimony further was to the effect that there were various kinds of arthritis, traumatic, gonorrheal, syphilitic, tuberculous, and infectious, and also another group the cause of which is unknown.

The testimony of those two witnesses was based upon an assumed history of the case. As opposed to this is another story, which was, and should have been, considered by the department. Appellant testified that, prior to July 11, 1933, he was taken to a hospital in Seattle to be treated for an injury to his elbow which occurred July 1, 1933. The hospital records made at, and subsequent to, that time, disclosed that, for three years prior thereto, appellant suffered from pain in his right side. The hospital record clerk testified concerning the report of September 9, 1935, that appellant was treated for "Lymphangitis," and that the previous medical history of appellant showed "pyelitis, syphilis, cholera, influenza, and prostatitis."

In opposition to the conclusions of appellant's two witnesses was the testimony of five physicians who testified for respondent. One of these witnesses was the physician who attended appellant four days after

his injury of July 11, 1933. Appellant told the physician then that he had had trouble with his back before, and that taping had relieved it. Appellant later came to the office of this same physician for the purpose of getting the physician "to help him get something out of the department," but no treatment was administered at that time. This physician again examined the appellant in December, 1936. He testified that appellant's case was one of progressive arthritis, but that the accident of 1933 had nothing whatever to do with the present condition of appellant.

Another physician treated appellant for poison oak on his hands, face, and body, July 1, 1933. He gave no treatment for back complaint except to apply a hot-water bottle. This physician examined appellant December 12, 1936. He gave as his opinion that appellant's present condition was not related to the accident of July 11, 1933.

The department named three other physicians as a commission to examine appellant. Two of those physicians treated appellant in 1935 and 1936. The three physicians thoroughly examined appellant in October, 1936. Each testified that, in his opinion, appellant's present condition was not due to the injury, but was simply a part of the progress of the preexisting disease, arthritis.

The evidence clearly preponderates in favor of the decision of the department; therefore, the judgment is affirmed.

STEINERT, BEALS, GERAGHTY, ROBINSON, JEFFERS, and SIMPSON, JJ., concur.

MAIN, J. (dissenting)—I adhere to the Departmental opinion in this case, and for the reasons stated therein I think the judgment of the superior court should be reversed. I therefore dissent.

BLAKE, C. J., concurs with MAIN, J.