[No. 30708.  Department One.  May 26, 1949.]

JOSEPH EHMAN, *Respondent*, v. THE DEPARTMENT OF
LABOR AND INDUSTRIES, *Appellant*.[1]

[1]Reported in 206 P. (2d) 787.

*The Attorney General* and *Theodore M. Ryan, Assistant,* for appellant.

*Allen & Carey* and *Ward W. Roney (Gordon S. Clinton,* of counsel), for respondent.

BEALS, J.—Joseph Ehman, respondent before this court, was, for more than twenty years, in the employ of the Defiance Lumber Company, of Tacoma. For the major portion of this period, his work consisted of lifting and carrying bundles of wooden flooring, approximately six inches in width and twenty feet in length. The weight of the bundles varied from sixty to eighty pounds. If the lumber was wet, the bundles were heavier by twenty or more pounds. Ehman would pick up these bundles, place them on his shoulder, and carry them a distance of twenty or thirty feet to the appropriate place, where he would stand the bundles on end.

During the year 1942, Ehman noticed that the use of his hands was impaired, and his work was changed, but the trouble with his hands persisted.

During the month of December, 1945, Ehman filed his claim with the department of labor and industries, stating that, while engaged in industry, he had suffered an occupational injury, within the workmen's compensation statute. After consideration, the supervisor of industrial insurance rejected the claim, his order reading:

"The above claim for compensation on account of injury alleged to have been sustained on 3 or 4 years ago is rejected for the reason that: Claimant's condition is not an occupational disease as contemplated by Section 7672-1."

Thereafter, Mr. Ehman's request for a rehearing before the joint board was granted, and evidence heard by the board. By order dated January 26, 1948, the joint board sustained the action of the supervisor rejecting the claim.

Within the time limited by law, Mr. Ehman appealed from the ruling of the joint board to the superior court for

Pierce county. The action was tried before the court, sitting with a jury, and, a verdict having been returned in favor of the plaintiff, judgment was entered upon the verdict, reversing the order of the joint board rejecting the claim and remanding the case to the department of labor and industries, with instructions "to allow the claim and fix the disability" suffered by the claimant. From this judgment, the department has appealed.

Appellant department assigns error upon the ruling of the superior court denying its motion to take the case from the jury and dismiss the action, appellant contending that the evidence introduced on the trial was insufficient to overcome the presumption that the decision of the department was correct, and, further, that the evidence failed to disclose that respondent was suffering from an occupational disease. Appellant also assigns error upon the court's ruling, over appellant's objection, that counsel for respondent's employer should be permitted to participate in the trial, and, finally, upon the entry of the judgment in respondent's favor.

The record before us consists of the departmental record and a statement of facts certified by the judge before whom the case was tried. The testimony before the joint board was read to the jury, under direction of the trial court.

Respondent's testimony was to the effect that he was sixty years of age, and had worked for the employer above named for more than twenty years; that, as the result of his long-continued labor, lifting, carrying, and depositing in place the heavy bundles of lumber, he had suffered an injury to his hands, which had become lame and sore; that he had about twenty-five per cent of normal grip in his right hand and about seventy-five per cent of that grip in his left hand; that he could not straighten his hands, and that they were progressively becoming worse. Respondent stated that, about eight years prior to the hearing, he had received a severe blow on the palm of his right hand, and that he suffered from the effects for a considerable time.

Two physicians testified before the department as wit-

nesses in respondent's behalf, and two were called by the department. Dr. W. H. Goering, who was called by the department, described the condition of respondent's hands as follows:

"There is a flexion deformity of the middle and ring fingers of both the right and left hands, with the fingers of the right hand flexed to an angle of approximately thirty degrees, and those on the left to an angle of approximately fifteen degrees. The flexor tendons of the ring fingers of both hands are very prominent in the palms, with the overlying skin adherent and nodular, and with firm slips of the palmar fascia extending to the tendons of the middle fingers bilaterally. The function of the thumbs, index and little fingers of both hands is apparently normal. The diagnosis was Dupuytren's contracture involving middle and ring fingers of both hands."

Dr. Goering testified that he had been practicing his profession since 1930, and that he had specialized in orthopedic surgery; that he had treated persons suffering from Dupuytren's contracture and had operated upon some so afflicted; that, at the request of the department, he had examined respondent during the month of December, 1946, and had learned from him the history of his case. The witness testified that it appeared to be the unanimous opinion of the foremost authorities on diseases of and injuries to the hand that Dupuytren's contracture is probably an hereditary disease, and not traumatic in origin. He stated that, in his opinion, respondent's disability was not occupational.

Dr. Cecil Hurst, called by appellant, stated that he had practiced medicine in the state of Washington since 1938; that his practice was general in its nature, including general surgery and orthopedics; that he had examined persons suffering from Dupuytren's contracture and had made a study of this type of disability; that, with Dr. Goering, he had examined respondent, at the request of appellant; that respondent had informed him concerning the history of his disease. The witness agreed with Dr. Goering that respondent's disability was not due to an industrial injury or accident, nor was it related to his employment.

Upon cross-examination, the witness testified that the foremost authorities on the disease maintained the view that "there is no definite relationship between Dupuytren's contractures and constant forceful use of the hands." The witness stated that he had treated probably a dozen persons afflicted with the disease, and that he had performed operations upon some in an attempt to relieve the condition. Upon further examination, the witness stated:

"I am prepared to say that the foremost authorities state that constant trauma does not produce it; that it tends to be or seems to be a hereditary disease."

Dr. E. C. Yoder, testifying as a witness on behalf of respondent, stated that he had practiced as a physician and surgeon in the state of Washington since 1924, being associated with the Western Clinic in the city of Tacoma; that he had examined respondent on at least two occasions, respondent having called at the clinic for diagnosis and treatment. The witness diagnosed respondent's condition as caused by Dupuytren's contracture, and agreed with the other physicians in describing the disease. The following occurred during the direct examination of the witness:

"Q. What is that condition attributable to, Doctor? A. Well, we actually don't know. Q. Is there any medical authority on the subject? A. Well, there is medical authority to substantiate the statement I just made. They guess as to what causes it, but there is no definite proof as they can find that will back up their theories on the subject. Q. Dr. G. G. Geissler from your clinic at one time testified that this condition was frequently found in people engaged in various types of work and husbandry such as dairying or where the hands are used to lift and grasp or hit objects. Do you concur in that thought? A. Well, yes, it is found in those types of employees and also in nonlaboring types of employees."

The witness referred to Practice of Surgery, by Dean Lewis, vol. 5, chapter 10, p. 222. Requested to read the pertinent portions of the text, the witness answered (reading and commenting): ·

" 'Although it has frequently been assumed that the patient's occupation predisposes to this deformity, no positive proof of this assumption has been advanced.' Now, under

etiology he states that 'various theories have been advanced.' Under occupational trauma he says, 'Occupational trauma is considered a factor since the condition occurs more often in men than in women and more frequently the right hand is affected than the left. Against that, the fact that the other hand, even if it is not used in the occupation, is usually involved at a later date.' Q. Well, now, does that fairly describe your own thoughts and views on the subject as a surgeon? A. Well, yes, I have seen only one or two cases that I can remember of in women. I think I've probably seen a few more in men who were occupied at labor, at no particular labor, and I remember a fisherman and some of the men that are working in the mills. I remember a county clerk back in Iowa where I practiced who did nothing but write with his hand. I think though, probably, it would average a little more on the industrial side. Q. Meaning, Doctor— A. Meaning that I have seen probably more cases in laborers—that is, occupied in various occupations using the hands than those that were not. However, my practice has been largely industrial. Q. But those factors would be inducive as the authority there stated, that at least traumatic origin is considered as an element of diagnosing the cause. A. Well, it's also considered as one of the causes in their theories on the subject."

Upon cross-examination, the witness testified that he had treated people suffering from the disease; that his practice was largely "in the industrial field," and that the majority of his patients who suffered from Dupuytren's contracture were engaged in industry. The witness then testified as follows:

"Q. Now, in that percentage of people where they had this, have you ever found in any case that their work was the cause? A. Not that I can definitely say. Q. So, in your practice, you have never found any case where the work they were doing was the cause of this particular disease? A. Not that I could ascertain, no."

At the close of the cross-examination, the witness testified:

"I want to make the statement again that I don't know what causes it. Q. This man had it in both hands, didn't he, this disease? A. Yes, both hands. Q. Well, Doctor, did you reach any conclusion—make any conclusion as to how

this fellow might have contracted this disease? Did you make any findings on that yourself? A. No."

Dr. G. G. Geissler, called as a witness by respondent, testified that he was a physician and surgeon who had been, for one year, in the employ of the Western Clinic; that he received his medical degree in 1939, engaged in general practice for a year, and, thereafter, served five years as an officer in the medical corps of the United States army. The witness stated that he had never treated or examined respondent, and had seen him for the first time on the day that the witness testified before the joint board. The witness examined respondent's hands, testifying that he diagnosed respondent's condition as "a bilateral Dupuytren's contracture of the flexor tendons of the ring fingers." The witness testified that he had been consulted by persons suffering from the disease, including many cases during the time that he served as an officer of the army.

He testified that he had assisted in the repair of several Dupuytren's contractures, and, on direct examination, in response to the question, "Doctor, what is your school of medical thought on the causes of this condition," answered:

"The opinion that I have relative to the etiology of such contractures is essentially this: as a result of recurrent localized trauma, a low grade inflamatory process occurs in the tendons and the tendon sheaths, which, over an extended period of time, results in contraction and deformity of the involved parts. There are also other factors that may be concerned. Contractures of this nature may be secondary to lacerations involving only skin and subcutaneous tissue alone, or those parts with the tendons and subsequent defect in healing."

Dr. Geissler then testified as follows:

"Q. Then I will again ask the question whether the type of work which the claimant testified he had done over the period of years, in your professional opinion, has any causal connection or association with the Dupuytren's condition which you have diagnosed? A. There again I would say conceivably, yes. Unfamiliar as I am with this patient and with the condition he had, and having failed to observe him over an extended period of time, and again being unfa-

miliar, except by description, with the type of work he does, I couldn't be dogmatic and say that his work was definitely the cause of these contractures. On the other hand, in answer more pertinently to the question, again, conceivably, yes. That is round about, isn't it? Q. Well, in your opinion, would those working conditions be any contributing factor to the development of that disease? A. Yes."

The witness testified that the disease was progressive in its nature and disabling, in that the hands of one afflicted would not be as strong or capable "as those of a normal man of his age in good physical condition."

The following appears on the cross-examination of Dr. Geissler:

"Q. Doctor, do I understand you to say that any one handling lumber may develop contracture of the ring finger such as claimant is now suffering from? A. Yes, sir. Q. Is this particular type of disability peculiar to the lumber industry? A. No, sir. . . . Q. Well, you don't think it originated in this claimant's case from any heavy bruise in the first place, do you? A. No, sir, I believe that chronic sustaining mild trauma played a definite part in this picture."

All of the doctors, testifying as experts, agreed in diagnosing respondent's condition as Dupuytren's contracture, and their testimony was, generally, in accord with Dr. Goering's description of the condition of respondent's hands.

The two physicians who examined respondent on behalf of the department agreed in testifying that the cause of respondent's disease is not known, although supposed to be inherited; that the consensus is that this particular contraction is not the result of trauma, and that, in the opinion of the witnesses, respondent's disability was not occupational in origin.

Dr. Yoder, testifying as a witness in behalf of respondent, frankly stated that the origin of the disease is uncertain; that he did not know what causes it, and that he had reached no conclusion as to how respondent had contracted the disease.

Dr. Geissler, also testifying in behalf of respondent, stated that, in his opinion, the disease might have resulted

from "recurrent localized trauma," and that, "conceivably," respondent's condition may have resulted from the work which he had performed. Later, he stated his belief "that chronic sustaining mild trauma played a definite part in this picture."

From the evidence in the record, it seems that many persons suffer from the disease who have not been engaged in occupations which would be likely to result in traumatic injury to the hands.

Laws of 1941, chapter 235, § 1, p. 772, Rem. Supp. 1941, § 7679-1 [P.P.C. § 705-5], defines occupational disease as follows:

"Within the contemplation of this act, 'occupational disease' means such disease or infection as arises naturally and proximately out of extra-hazardous employment. . . ."

The statute continues by providing for compensation benefits for workmen who "suffer disability from an occupational disease in the course of an extra-hazardous employment."

In the case of *Romeo v. Department of Labor & Industries*, 19 Wn. (2d) 289, 142 P. (2d) 392, this court reversed a judgment of the superior court entered upon the verdict of a jury in favor of the plaintiff, who claimed to be suffering from an occupational disease, holding that there was no

" . . . substantial evidence to support a verdict that the disease or infection from which respondent suffers was contracted through the inhalation of dust in an industry where intense dust prevails or that his disease or infection arose naturally and proximately out of his employment."

In the case of *Rambeau v. Department of Labor & Industries*, 24 Wn. (2d) 44, 163 P. (2d) 133, this court, in reversing a judgment of the superior court entered upon the verdict of a jury in favor of the widow of a workman, who, by her claim filed February 5, 1944, stated that her husband died January 23, 1944, as the result of an occupational disease, said:

"The verdict of the jury in cases of this nature has the same value as a verdict in ordinary law action and will not

be disturbed unless there is neither evidence, nor inference therefrom, to sustain it. Further, it is necessary to view the evidence on the standpoint most favorable to the party who has secured the verdict. *Omeitt v. Department of Labor & Industries*, 21 Wn. (2d) 684, 152 P. (2d) 973.

"It must also be borne in mind that respondent in this case, by appealing from the adverse order of the joint board, assumed the burden of proof and of submitting to the jury sufficient substantial facts, as distinguished from a mere scintilla of evidence, to make a case for the jury. *Kravelich v. Department of Labor & Industries*, 23 Wn. (2d) 640, 161 P. (2d) 661. This is required in view of the provisions of Rem. Supp. 1943, § 7697 [P.P.C. § 704-1], which are as follows:

" 'If the Court shall determine that the Department has acted within its power and has correctly considered the law and found the facts, the decision of the Department shall be confirmed; otherwise, it shall be reversed or modified.

. . .

" 'In all court proceedings under or pursuant to this act the decision of the Department shall be *prima facie* correct and the burden of proof shall be upon the party attacking the same.' "

In the course of the opinion, we said:

"The evidence produced in this case was, at best, conjectural and speculative and was not sufficient upon which to base a decision that the disease of which Rambeau died was caused by anything that happened to him at his place of employment. In other words, there was no substantial evidence produced at the hearing before the joint board to justify it in deciding for respondent.

"Before recovery can be had upon the claim of occupational diseases, it must appear that the disease, of which complaint is made as the cause of injury, is peculiar to a given occupation and brought about by exposure by certain harmful conditions which are constantly present with all workmen in the occupation. [Citing cases.]"

Respondent relies upon the case of *Cugini v. Department of Labor & Industries*, 31 Wn. (2d) 852, 199 P. (2d) 593, in which we said:

"Unless we can say as a matter of law that there is neither evidence nor reasonable inference from evidence sufficient to sustain the verdict that claimant was in the course of his

employment at the time he was injured, the question whether the trial court properly granted judgment *non obstante veredicto* must be answered in the negative."

We continued by quoting from the case of *Omeitt v. Department of Labor & Industries,* 21 Wn. (2d) 684, 152 P. (2d) 973.

In the *Cugini* case, this court, sitting *En Banc,* affirmed a judgment entered by the superior court reversing an order of the department allowing the claim (notwithstanding the verdict of a jury in favor of the claimant), holding that, upon the record, the trial court's judgment was correct.

In the recent case of *Simpson Logging Co. v. Department of Labor & Industries,* 32 Wn. (2d) 472, 202 P. (2d) 448, we affirmed a judgment of the superior court, sitting without a jury, affirming an order of the department allowing the claim of an employee of the plaintiff and making an award in his favor, because of an occupational disease which he had contracted while in plaintiff's employ. The employee, Burtch, claimed to have contracted asthma while working for the plaintiff, and that the disease was caused by smoke in the plaintiff's plant. The department allowed his claim and made an award in his favor. On review by the employer before the joint board, the action of the supervisor was sustained, and the employer appealed to the superior court. The court considered the statutes of this state allowing compensation to persons engaged in extrahazardous industry, because of occupational diseases contracted in the course of their employment, and referred to the act of 1941 quoted above. In affirming the judgment appealed from, we said:

"Under the present act, no disease can be held not to be an occupational disease as a matter of law, where it has been proved that the conditions of the extrahazardous employment in which the claimant was employed naturally and proximately produced the disease, and that but for the exposure to such conditions the disease would not have been contracted."

In the case at bar, respondent, by his appeal to the superior court, assumed the burden of proof and of produc-

ing before the court and jury sufficient, substantial, probative facts (as distinguished from a mere scintilla of evidence) to warrant the reversal of the department's ruling by a verdict and judgment. *Kralevich v. Department of Labor & Industries,* 23 Wn. (2d) 640, 161 P. (2d) 661; *Rambeau v. Department of Labor & Industries, supra.*

Pursuant to the case of *Simpson Logging Co. v. Department of Labor & Industries, surpa,* respondent may prevail only by producing evidence, which supports the verdict of the jury, to the effect that the extrahazardous employment in which he was engaged naturally and proximately resulted in respondent's becoming afflicted with the disease from which he suffers, and, further, by showing, with the necessary quantum of evidence, that, but for his exposure to the circumstances and conditions incident to his employment, he would, in all probability, not have become a victim of the disease. The peculiar nature of the disease known as Dupuytren's contracture demonstrates that these requirements should be considered together.

█ In the case at bar, it must be remembered that workmen's compensation statutes shall be liberally construed, and, also, that that rule does not apply to questions of fact but to matters concerning the construction of the statute, and that the principle does not dispense with the requirement that those who claim benefits under the act must, by competent evidence, prove the facts upon which they rely. *Hastings v. Department of Labor & Industries,* 24 Wn. (2d) 1, 163 P. (2d) 142; *D'Amico v. Conguista,* 24 Wn. (2d) 674, 167 P. (2d) 157.

█ It is, of course, the general rule that, when the verdict of a jury is attacked for the assigned reason that it is not supported by the record, we are not concerned with the preponderance of the evidence, as in cases tried to the court, but only with the question of the sufficiency of the evidence to support the verdict. *Husa v. Department of Labor & Industries,* 20 Wn. (2d) 114, 146 P. (2d) 191; *Omeitt v. Department of Labor & Industries, supra.*

In the case at bar, the question submitted to the jury for its determination was whether respondent had sustained a

compensable, industrial injury, as the result of becoming a victim of an occupational disease arising naturally and proximately out of his extrahazardous employment.

Appellant argues that the trial court erred in denying its motion to take the case from the jury and affirm the order of the department, contending that evidence sufficient to overcome the presumption that the decision of the department was correct, was not introduced, and, further, that respondent failed to produce evidence sufficient to support a finding that he was suffering from an occupational disease. Appellant also assigns error upon the entry of judgment by the trial court in respondent's favor, based upon the jury's verdict.

In *Alfredson v. Department of Labor & Industries*, 5 Wn. (2d) 648, 105 P. (2d) 37, this court, sitting *En Banc*, said:

"Counsel for appellants in their oral argument contended that the court should have determined from the record whether the evidence submitted at the hearing conducted by the joint board overcame the *prima facie* presumption as to correctness of the order of that board, this presumption being created by Rem. Rev. Stat., § 7697 [P.C. § 3488].

"That, however, is not the function of the court. The presumption of the correctness of the joint board's findings is for the consideration of the jury under proper instructions. The court, of course, may pass upon the sufficiency of the evidence to take the case to the jury. If the evidence introduced at the hearing before the joint board offers room for a difference of opinion in the minds of reasonable men, then the case must be presented to the jury. . . .

"We hold that the presumption accorded to the findings of the joint board lost its force and effect when the jury decided the questions of fact which were presented to it. The verdict of the jury in such cases, when based upon substantial evidence, forecloses a further consideration of the presumption accorded to the order of the joint board."

See, also, *Sumerlin v. Department of Labor & Industries*, 8 Wn. (2d) 43, 111 P. (2d) 603; *Bilski v. Department of Labor & Industries*, 8 Wn. (2d) 594, 113 P. (2d) 62; *Nelson v. Department of Labor & Industries*, 9 Wn. (2d) 621, 115 P. (2d) 1014; *Calkins v. Department of Labor & Industries*,

10 Wn. (2d) 565, 117 P. (2d) 640; *Ziniewicz v. Department of Labor & Industries*, 23 Wn. (2d) 436, 161 P. (2d) 315.

■ If the record contains substantial evidence, sufficient to support the verdict of the jury, as distinguished from a mere scintilla, the verdict should not be set aside. By "substantial evidence" is meant evidence of such a character and substance as to convince an unprejudiced, thinking mind of the truth of that to which the evidence is directed. *Omeitt v. Department of Labor & Industries, supra*; *Rambeau v. Department of Labor & Industries, supra*; *Cugini v. Department of Labor & Industries, supra*.

In the *Rambeau* case, we said:

"The actual facts in cases of this nature must be determined from the testimony of medical men, though, of course, in some cases the testimony of lay witnesses has a material bearing upon the question involved. [Citing cases.]

"A case for the jury is not made out by expert evidence when it is shown that a condition might have, or could probably have been brought about by a certain happening. [Citing cases.]"

In the case of *Anton v. Chicago, M. & St. P. R. Co.*, 92 Wash. 305, 159 Pac. 115, appears the following:

"Taking the opinion of the witness for the appellant, as quoted above, at its full worth, we think it is no more than a statement of a possibility or possibly a probability, more or less remote, that the tuberculosis is a result of the injury. This is not enough. The law demands that verdicts rest upon testimony and not upon conjecture and speculation. There must be some proofs connecting the consequence with the cause relied upon."

In the case of *Kralevich v. Department of Labor & Industries, supra*, this court, after reviewing several of our decisions, affirmed the trial court, which had taken the case from the jury for lack of sufficient evidence to support a verdict in the plaintiff's favor.

In the case of *Seattle-Tacoma Shipbuilding Co. v. Department of Labor & Industries*, 26 Wn. (2d) 233, 173 P. (2d) 786, this court, sitting *En Banc*, said:

"The general rule, from which this court has never deviated, is stated in 135 A. L. R. 517, as follows:

" 'It appears to be well settled that medical testimony as to the possibility of a causal relation between a given accident or injury and the subsequent death or impaired physical or mental condition of the person injured is not sufficient, standing alone, to establish such relation. By testimony as to possibility is meant testimony in which the witness asserts that the accident or injury "might have," "may have," or "could have" caused, or "possibly did" cause the subsequent physical condition or death or that a given physical condition (or death) "might have," "may have," or "could have" resulted or "possibly did" result from a previous accident or injury—testimony, that is, which is confined to words indicating the possibility or chance of the existence of the causal relation in question and does not include words indicating the probability or likelihood of its existence.' "

The *Romeo* and *Rambeau* cases, *supra*, and the case of *St. Paul & Tacoma Lbr. Co. v. Department of Labor & Industries*, 19 Wn. (2d) 639, 144 P. (2d) 250, also discuss this problem.

In the case at bar, evidence was introduced to the effect that, for seventeen years, respondent's work had consisted of lifting, gripping, and carrying heavy bundles of lumber. This work, of course, involved constant use of respondent's hands. Respondent testified, concerning the history of his afflication, that it had commenced slowly, first attacking his right hand seven or eight years prior to his testimony, and that, at about the same time or shortly before or thereafter, he had suffered a heavy blow on the palm of his hand.

All the physicians who testified agreed that, at the time of the hearing before the department, respondent was sufering from Dupuytren's contracture. We have quoted at length from the expert testimony, *supra*.

The question to be here determined is whether the evidence of the experts meets the test, as laid down in our decisions, as to the quantum of evidence required for the submission of such a case as this to a jury or to support the verdict of a jury in favor of the claimant.

In the case of *Boyer v. Department of Labor & Industries*, 160 Wash. 557, 295 Pac. 737, it appeared that the respondent

had suffered a rather severe industrial injury to his right foot; that he was incapacitated for some time thereafter, and that, five months after being hurt, he was found to be suffering from chronic lymphatic leukemia. He had been allowed permanent partial disability on account of the injury to his foot, but, later, filed a claim for permanent total disability because of the lymphatic condition from which he was suffering. The physicians who testified before the department agreed that the cause of lymphatic leukemia was unknown. Four physicians testified that, in their opinion, there was no relationship between the injury suffered and the disease. Two other physicians testified in support of the claimant's contention. The department denied the claim, whereupon Mr. Boyer appealed to the superior court, which, after a hearing, entered findings in favor of the claimant, reversing the order of the department. This court reversed the judgment of the superior court and affirmed the order of the department. In the course of the opinion, we said:

"Dr. Dowling's opinion is to the effect that, inasmuch as the cause of the disease is unknown, and there is no evidence of its presence prior to the injury, and, following the injury, the disease became apparent, 'there must be assumed from those facts a definite causal relationship between his injury and his disability.'

"Dr. Hunter's opinion is not that strong. He testified that it would not be unreasonable to assume that the accident was the factor which precipitated the total disability, but was unable to say whether it was the causative factor of the disease. He, too, testified that the cause of lymphatic leukemia was unknown.

"Dr. Dowling goes no farther than that the injury must be assumed as the cause of the disease, while Dr. Hunter is of the view that it would not be unreasonable to so assume. That testimony rises no higher than conjecture. When viewed in the light of the testimony that the cause of the disease is unknown, and weighed with the testimony of four other physicians that there was no relationship between the injury and the disease, it is clear that respondent has failed to sustain the burden of proving, by a fair preponderance of the evidence, either that the blow caused the disease or accelerated its development."

600

The case cited differs from the case at bar in that the former was tried to the court; however, the language quoted is pertinent to the situation here presented.

In the case of *Tonkovich v. Department of Labor & Industries,* 31 Wn. (2d) 220, 195 P. (2d) 638, this court affirmed a judgment of the superior court dismissing an action by an injured workman claiming aggravation of disability, notwithstanding the verdict of a jury in favor of the plaintiff. It appeared that, during the year 1935, the claimant had suffered an industrial injury to his right foot. His claim for time loss and permanent partial disability was allowed. Ten years later, the claimant filed an application for the reopening of his claim, because of an aggravation of condition. His claim was denied by the department, whereupon plaintiff appealed to the superior court. The case was tried to a jury, and a verdict returned in favor of the plaintiff. It appeared that the plaintiff was suffering from an abdominal cancer, and the jury, answering special interrogatories, found that this condition was caused by the plaintiff's injury suffered in 1935. The plaintiff appealed to this court from the judgment of the superior court setting aside the verdict and dismissing the action.

From our opinion, it appears that one physician testified that the workman's disability in his abdomen probably could be due to the original injury, but that it would be difficult to say just exactly what caused such a condition. Two other physicians stated that, in their opinion, the cancerous condition could not be attributed to the original injury. We affirmed the judgment of the trial court. In the course of the opinion, appears the following:

"We cannot agree with the witness Levinson that the cancer was probably caused by the injuries resulting from the claimant's fall. It is quite true that courts must necessarily depend upon the evidence of experts in cases of this nature, because of the fact that the courts are not experts in medicine, lumbering, agriculture, mining, electricity, or any of the numerous activities of life, to the study of which, men and women devote their entire time. It is also true that questions of whether a given physical defect is attributable

to, or caused by an impaired physical condition, must be determined from medical experts. [Citing cases.]

"However, courts cannot remain passive and approve statements made by experts on the witness stand which are unmistakably erroneous. There is no basis whatever for the doctor's statement that the cancer was caused by the injury to the claimant's right foot. It is a fact universally known that the cause of cancer is unknown. Medical authorities without exception are of that opinion. Many authorities could be cited to this effect. It is necessary to cite but two. They are: Boyd, Text Book of Pathology (3d ed.), 289; Ewing, Causation, Diagnosis and Treatment of Cancer, pp. 32-36.

"Our conclusion is supported by the holding of this court in *Boyer v. Department of Labor & Industries*, 160 Wash. 557, 295 Pac. 737. In that case, we held that the burden of overcoming the *prima facie* presumption of the correctness of the department's decision denying an injured workman's claim for total disability, is not overcome where it appears that, following a bruise on the foot, the claimant suffered from chronic lymphatic leukemia, the cause of which is unknown."

In the case of *Eyer v. Department of Labor & Industries*, 1 Wn. (2d) 553, 96 P. (2d) 1115, we said:

"In approaching the problem, we must bear in mind that our statute, Rem. Rev. Stat., § 7697 [P. C. § 3488], provides:

" ' . . . In all court proceedings under or pursuant to this act the decision of the department shall be prima facie correct and the burden of proof shall be upon the party attacking the same. . . .'
and that, when a complainant appeals to the courts, he assumes and must meet the burden of proving that he sustained an injury compensable under the statute. *Ferguson v. Department of Labor & Industries*, 197 Wash. 524, 85 P. (2d) 1072, 90 P. (2d) 280.

"In determining whether the existing physical condition of a claimant is attributable to a preexisting disease or congenital infirmity, a finding of fact based upon the testimony of skilled and professional men, when reasonably supported, will not be disturbed."

Decisions from other states, construing dissimilar workmen's compensation acts, afford little help in such questions

as those here presented. Consideration of such decisions, construing different statutes, merely darkens counsel.

We quote again from the case of *Simpson Logging Co. v. Department of Labor & Industries, supra*:

"The intent of the legislature must be drawn from the language used in the present statute. Decisions interpreting dissimilar statutes or the common law can be of little assistance to us. . . . The legislature is presumed to have been familiar with the meaning of 'proximate cause' as used by the courts, and that being so, when they defined as an occupational disease those diseases or infections as arise naturally and *proximately* out of extrahazardous employment, it would follow that they meant that the condition of the extrahazardous employment must be the proximate cause of the disease for which claim for compensation is made, and that the cause must be proximate in the sense that there existed no intervening independent and sufficient cause for the disease, so that the disease would not have been contracted but for the condition existing in the extrahazardous employment."

The record made before the department, which, of course, was the record before the superior court on appeal from the department's ruling denying respondent's claim, in order to support a judgment in favor of respondent claimant, must contain competent and credible testimony or evidence, amounting to a degree of proof higher than a possibility that the disease claimed to be occupational in its nature falls within that scientific classification.

Considering all of the expert medical testimony, the record does not bring this case within the required classification. The most that can be said is that respondent's unfortunate physical condition may be or possibly is an occupational disease. This is not sufficient to warrant affirmance of the judgment.

The conclusion which we reach renders it unnecessary to discuss appellant's other assignments of error.

The judgment appealed from is reversed.

Jeffers, C. J., Steinert, Mallery, and Hill, JJ., concur.