[No. 33983. Department Two. August 29, 1957.]

A. B. SAMUELSEN et al., Respondents, v. MERRY MANUFACTURING COMPANY, Appellant.[1]

[1]Reported in 314 P. (2d) 634.

*Bogle, Bogle & Gates* and *J. Kenneth Brody*, for appellant.

*Clarence J. Coleman*, for respondent.

SCHWELLENBACH, J.—Defendant's predecessor was a partnership composed of A. V. Allberry and C. B. Merry. They manufactured a garden tractor known as the "Merrytiller." The business was seasonal. The partners wanted to manufacture other items to utilize more of their over-all facilities during the entire year without actually increasing the general expense of the rest of the operation. In order to accomplish this, they initiated what was called "Employee Suggestion System." The plan was this:

"1. The company will pay for accepted suggestions as follows:

"A—If the result of using the suggestion can be measured in money, 20% of the amount of that result during the first year of use. 'Result' is a saving or additional profit, minus the cost of any special equipment required to make it possible, or such fraction of that cost as is properly chargeable to the year involved."

Plaintiffs were employees of the partnership. In acceptance of the Suggestion System offer, they invented an attachment for the Merrytiller, called a "mulching rotor", which was accepted and manufactured by the defendant. Substantial breakage of the rotor blades occurred during the first year, due to the material used in the manufacture thereof. In view of this, the parties agreed to continue the plan for another year, using this second year as the basis for determining what, if any, compensation would be payable to the plaintiffs for their invention. At the end of this year, the company stated that there was no profit. The plaintiffs commenced this action, alleging the company made a profit and that their share of the "additional profit" was three thousand dollars.

The principal issue raised by the pleadings was whether or not the defendant company made an "additional profit," as that term was used in the Suggestion System offer.

The plaintiffs called Carl B. Benson, the secretary-treasurer of the company, who testified that for the year in question, July 1, 1953 to June 30, 1954, the company manufactured and sold 3,880 mulching rotors; that the cost of manufacture, per unit, was $8.22. In explaining what was included in the *manufacturing cost figure*, he stated that only three cost items were included: (1) direct labor; (2) direct material; and (3) proportionate share of the factory overhead. On cross-examination, he testified that although the attachment sold for $13.41, the company suffered a loss during the period on its manufacture because the *total cost figure* exceeded the selling price.

Mr. Merry, who was a partner in the business during this time in charge of plant management and production, testified for the plaintiffs. He estimated that the company made a profit during the second year it produced the "mulching rotor." In arriving at this conclusion, he accepted and used Mr. Benson's figure of $8.22 as the cost of manufacture. The breakdown would be as follows:

```
"Selling Price .......................$   13.41
 Less 10% Selling Commission ........      1.34
                                         _____
                                          12.07
 Cost of Manufacture .................      8.22
                                         _____
 Profit ..............................      3.85
 3,880 Sold ......................... 14,938.00
 20% ............................... 2,987.60"
```

(The jury awarded $2,979.84.)

Mr. Merry admitted, under cross-examination, that in his estimate of additional profit he did not include the cost of advertising, interest on capital and labor, interest, amortization of patent on Merrytiller, royalty expense, packing and shipping, service expense, insurance, rental of storage space, year-end inventory, taxes, and experimental and improvement work. He admitted that a proportionate share

of the cost of all of these items should be included in determining "additional profit."

Mr. Haskell, one of the respondents, who had been employed as leadman foreman in the machine shop, testified under cross-examination:

"Q. Then you thought that they had made at least $15,000.00 profit on the mulching rotor? A. I did. Q. What is the basis of your thinking that? What is your proof of that? A. That rotor can be manufactured for about $8.00. It sold for about twelve, I believe, counting all discounts, that would leave roughly a $4.00 profit, and there were roughly 3800 built. Q. Now, did that eight dollar figure — what did that include? A. It cost the company to manufacture those that much. Q. Did that include the cost of labor? A. Certainly. Q. Did it include the cost of materials? A. Yes. Q. Did it include any apportionment for overhead? A. According to the suggestion plan, any additional cost that those things might have caused would be charged against it. That was according to the agreement that we had. Q. I want to know if your figure of cost around $8.00 included any apportionment for overhead? A. I figured them two ways, and one was by the pound — what it could be made for in a big shop, and as close as I could figure, $8.00 was about the figure. That figure is a hundred percent above labor and overhead. Q. And did your figure of $8.00 include administrative expenses? A. That is all figured in that overhead. Q. Did it include the selling expenses? A. The selling expenses were deducted, I think, from the $13.41, giving the $12.00 figure. Q. Did your figure include advertising expenses? A. That would include a small amount. I might say, any overhead figure where you figure that hundred percent overhead, it would cover a small portion for that; there wasn't any large amount spent on advertising. Q. Did your figure include any charge for the interest on capital involved in the manufacture and sale of the mulching rotors? A. There couldn't have been a large amount of capital involved. Q. I only asked, sir, if your figures included that. A. No, I didn't figure that, because they never stored one; they manufactured them and sold them on order. Q. Do you have any calculation with you showing how you figured the cost of the mulching rotors as opposed to the sale price? A. No. Q. You don't have any breakdown of how you figured out there would be this

profit? A. I can give you an approximation. Q. No; I want to know if you brought any calculations into court. A. No, I didn't. Q. What did you say the mulching rotors cost? How much did you say they cost? A. Approximately $8.00. Q. How much of that was material cost? A. In the vicinity of $4.00. Q. How much was the labor cost? A. It would be less than an hour, and the labor at that time was, oh, it was around $2.00 an hour. It would be a little less than that. Labor costs should be between $1.50 and $2.00. Q. Will you state what other expenses compose the $8.00 cost of the mulching rotor? A. Well, a hundred percent overhead, which would cover all the cost; overhead figured on the basis of labor, which is the way most small business shops figure. Q. Have you ever done any work in bookkeeping or accounting? A. I have kept my own books. Q. Have you ever kept books or records or been an accountant in a manufacturing enterprise? A. No, sir. Q. So that the figures which you gave as the cost are your own estimate, is that correct? A. They are. Q. They are not based upon a review of the books and records of the Merry Manufacturing Company? A. No."

The jury returned a verdict for the plaintiffs in the amount of $2,979.84, and the judgment was entered accordingly. This appeal follows.

Error is assigned to the trial court's refusal to strike the testimony of Mr. Merry; its denial of appellant's motions for a directed verdict and for judgment notwithstanding the verdict.

■ The trial court did not err in refusing to strike the testimony of Mr. Merry, who had been a partner in charge of production. The question of the weight of his testimony was a matter to be decided by the jury.

■ When the verdict of a jury is attacked on the record, the court is not concerned with the preponderance of the evidence, but only with the question of the sufficiency of the evidence to support the verdict. *Ehman v. Department of Labor & Industries,* 33 Wn. (2d) 584, 206 P. (2d) 787; *Arthurs v. National Postal Transport Ass'n,* 49 Wn. (2d) 570, 304 P. (2d) 685.

■ In a case such as this, the evidence must be viewed in the light most favorable to the party against whom the

motion is made, and all material evidence favorable to the contention of the party benefited by the verdict must be taken as true. *Ruff v. Fruit Delivery Co.*, 22 Wn. (2d) 708, 157 P. (2d) 730; *Arthurs v. National Postal Transport Ass'n, supra.*

■ Evidence sufficient to support a verdict must be substantial; and by "substantial evidence" is meant that character of evidence which would convince an unprejudiced, thinking mind of the truth of the fact to which the evidence is directed. *Ruff v. Fruit Delivery Co., supra*; *Arthurs v. National Postal Transport Ass'n, supra.*

Now was there substantial evidence to support the verdict, or was the verdict based upon speculation and conjecture? The term "additional profit" means, roughly, the amount realized from the sale of the new device alone, over and above the costs of its production. There was no basis for Mr. Haskell's testimony, either from the books of the company or from any knowledge of the cost production. We may not agree with appellant or Mr. Merry that any of the additional items mentioned above should be considered in computing the additional profit that came to the business from the manufacture and sale of this one article; nevertheless, this evidence is in the record.

■ The burden was on respondents to prove "additional profit." They did not sustain the burden. Their proof was that 3,880 mulching rotors were manufactured and sold; that the selling price was $13.41, from which should be deducted a ten per cent selling commission; that the cost of manufacture was $8.22; and that, in addition thereto, the cost should include the items mentioned above. They submitted no proof as to the cost of those items. The verdict of the jury as to the amount of "additional profit" was based upon speculation and conjecture. There was no substantial evidence to submit this issue to the jury.

The judgment must be reversed.

HILL, C. J., DONWORTH, ROSELLINI, and FOSTER, JJ., concur.